UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-------------------------------------------------x
                                                 :
VINEYARD VINES, LLC                              :
                                                 :
                    Plaintiff,                   :
v.                                               :   Civil Action No.: 3:14-cv-01096-JCH
                                                 :
                                                 :
                                                 :
                                                 :
MACBETH COLLECTION, L.L.C.,                      :
MACBETH COLLECTION BY                            :
MARGARET JOSEPHS, LLC,                           :
MACBETH DESIGNS LLC,                             :
MARGARET JOSEPHS, and                            :
various JOHN DOES, JANE DOES and                 :
XYZ COMPANIES (Unidentified),                    :
                                                 :
                    Defendants.                  :
-------------------------------------------------x
```

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION

Pursuant to Local Rule 7(c), Defendants, MacBeth Collection, L.L.C., MacBeth Collection by Margaret Josephs, LLC, MacBeth Designs LLC and Margaret Josephs (collectively referred to as "MacBeth") hereby respectfully submit this Memorandum in support of their Motion for Partial Reconsideration of the Court's ruling of December 5, 2018.

The instant Motion for Reconsideration is limited to two (2) related issues in the Court's ruling. The first being the applicable standard of proof that must be applied in determining the alleged violation of the Court's Order and Permanent Injunction. As set forth herein, MacBeth respectfully asserts that the standard of proof to establish such a violation is by "clear and

1

convincing evidence" and not by a "preponderance of the evidence" as applied in the Court's decision.  Of the two theories of alleged violations addressed by the Court, only the one related to the issue of Access Bags is deemed to have satisfied the low burden of preponderance.  But, as the Court noted, there exists contradictory evidence to the purported violation, and the evidence relied upon supports an "inference" of the supposed violation.  (See pp. 25 and 27 of the Court's Ruling).  Applying the applicable clear and convincing standard to the record, the plaintiff has not met its burden to establish a violation of the injunction via Access Bags or any other theory.

The evidence relied on to establish the alleged violation concerning Access Bags relates to the second issue for reconsideration; namely, that the facts before the Court do not support a finding of a violation of the Permanent Injunction in relation to Access Bags under the applicable clear and convincing standard (or any standard for that matter).  As demonstrated below, there is ample support to establish that MacBeth did not "enable others to sell or pass off" infringing items or otherwise "assist[ed], aid[ed] or abet[ed]" Access Bags in violating the Permanent Injunction.  Quite the contrary, the documentary evidence establishes that MacBeth complied with the Court's Order and instructed third parties - including Access Bags - to cease all sales of any allegedly infringing items.  In fact, there are statements made directly from Access Bags which unequivocally, and under any standard applied, demonstrate that MacBeth did not violate the injunction as alleged.[1]

In further support of its Motion, MacBeth states as follows:

---

[1] Interestingly, these statements were not part of the sworn statement of Access Bags on this issue.  In fact, the documentary evidence refutes the uncorroborated attestation of Access Bags in its entirely and questions the veracity of the same.

**I.      STANDARD OF PROOF**

The applicable standard of proof in this matter in determining whether MacBeth violated a consent judgment and an agreed-to Permanent Injunction is clear and convincing, not merely by a preponderance of the evidence.    In reaching its conclusion to apply the preponderance standard, the Court reasoned that "[a]lthough the Permanent Injunction at issue here has been ordered by the Court, it was agreed upon by the parties.  As such, it 'is a contract between the parties, and should be *interpreted* accordingly.'"   (See p. 15 of the Court's Ruling)(emphasis added); citing, Tourangeau v. Uniroyal, Inc., 101 F.3d 300, 307 (2nd Cir. 1996); see also, United States v. ITT Cont'l Baking Co., 420 U.S. 223, 238 ("[A] consent decree or order is to be *construed* for enforcement purposes basically as a contract[.])."  (emphasis added).    In further support, the Court notes that under Connecticut law, a party asserting a breach of contract has the burden of establishing the breach by a preponderance of the evidence.  Citing,  Franco v. Yale Univ., 238 F. Supp. 449, 453 (D. Conn. 2002), aff'd, 80 F. App'x 707 (2nd cir. 2003).    However, this is not a breach of contract case; this case involves the enforcement of a court order.    While the meaning of the words within the agreed-to order should be given their plain and reasonable meaning as written by the parties, the plaintiff's burden does not change from the high threshold of clear and convincing evidence of a violation of the same.

As pointed out in its moving papers, the Court is empowered to enforce compliance with its orders, agreed to or otherwise, through *civil contempt*.  Indeed, the plaintiff sought an order of contempt by way of its motion.  To order such relief, "a movant must establish that (1) the order

of the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." <u>Independent Living Aids, Inc. v. Maxi-Aids, Inc.</u>, 349 F.Supp. 509, 515 (E.D.N.Y Nov. 26, 2004); <u>citing</u>, <u>Perez v. Danbury Hospital, Danbury Office of Physician Services, P.C.</u>, 347 F.3d 419, 424-425 (2d Cir. 2003).  Moreover, to hold a party in civil contempt the "alleged contemnor 'must be able to ascertain from the four corners of the order precisely what acts are forbidden.'"  <u>Id.</u>, <u>quoting</u> <u>Drywall Tapers and Pointers of Greater New York, Local 1974 v. Local 530 of Operative Plasterers and Cement Masons Intern. Ass'n</u>, 889 F.2d 389, 395 (2d Cir.1989).  As noted in <u>United States v. ITT</u>, "Courts must find the *meaning* of consent decree within its four corners…" 420 U.S. at 233.  (emphasis added).   In other words, the court must read and apply an agreed-to order "within its four corners and may not look beyond the document to satisfy on the parties' purposes." <u>United States v. International Bhd. of Teamsters</u>, 78 F.2d 68, 73 (2nd Cir. 1992).

While the Consent Judgment and Permanent Injunction were agreed to, that does not alter the standard of proof *to enforce an order* of the Court.    Under prevailing case law, the standard of proving a decree violation in a civil contempt action is clear and convincing.    That is exactly what the plaintiff is seeking here; a finding that MacBeth violated the order of the Court. To be sure, "[a] party seeking to hold another in contempt faces a **<u>heavy burden</u>**, needing to show by 'clear and convincing evidence' that the alleged contemnor has violated a 'clear and unambiguous' provision of the consent decree." <u>United States v. Microsoft Corp.</u>, 147 F.3d 935, 940 (D.C. Cir. 1998)(emphasis added)(applying clear and convincing standard to an alleged violation of a consent decree); <u>see</u> <u>also</u>, <u>FTC v. Enforma Natural Prods. Inc.</u>, 362 F.3d 1204,

4

1211 (9th Cir. 2004)(finding that where the parties resolved the complaint through entry of a stipulated order which included a monetary payment and an injunction, the applicable standard to determine a violation is by clear and convincing); King v. Allied Vision, Inc., 65 F. 3d 1051, 1058 (2nd Cir. 1995).

In the instant case, the plaintiff has not satisfied its burden with respect to any of the alleged violations, including that relating to Access Bags.  In finding the alleged violation, the Court noted that:  "Defendants have submitted an affidavit of Josephs contradicting some of the statements made by Simonides."   (See p. 25).   This contradiction alone brings the matter beyond a mere preponderance and cannot satisfy the more stringent standard of clear and convincing.   The Court also noted that the evidence produced by MacBeth supported an "inference" that there was a violation of the Court's order.   (See p. 27).  The consideration of inferences also does not satisfy the standard of clear and convincing.

The standard to be applied in determining whether MacBeth violated the Court's Consent Judgment and Permanent Injunction in relation to Access Bags is clear and convincing.  The record evidence does not support the finding under that standard.  In fact, there is ample evidence which  supports the finding of no violation.

## II.    NO EVIDENCE OF VIOLATION OF INJUNCTION

In makings its ruling, the Court found - utilizing a preponderance of evidence standard and not the appropriate clear and convincing standard - that MacBeth may have violated the Preliminary Injunction by authorizing and/or directing a third-party, Access Bags, to sell the allegedly infringing products.  To support this finding, the Court relied predominantly, if not exclusively, on an affidavit of Kurt Simonides, the founder and President of Access Bag n' Pack,

Inc. (See p. 23). The Court noted that Mr. Simonides attested under oath that from November of 2014 until May of 2015, he was told by MacBeth (via its agents and/or representatives) that there should be no use of the allegedly infringing whale products. (See p. 23 -24). During that span of time, there were numerous written communications between MacBeth and Access Bags. None of those communications remotely suggest that MacBeth was authorizing the sale of any whale products, as admitted by Mr. Simonides and as noted be the Court. Id. Interestingly, each of the instances where Mr. Simonides was informed to cease sales of the products were in writing and produced before the Court. Id. Contrary to this pattern of *written documentation*, Mr. Simonides attests that on an unspecified date in "late 2015," MacBeth *verbally* informed him that the dispute with Vineyard Vines was resolved and the he could now sell off the remaining whale bags he had inventory. Id. This claim is absolutely contrary to the full weight of the record evidence. Indeed, the Court pointed out the other third party vendors that MacBeth directed to cease sales of the allegedly infringing products. (See p. 27). All such instructions were done in writing, including the messages to Access Bags. There is no documentary evidence in the record whatsoever - other than Mr. Simonides affidavit - which could reasonably establish that MacBeth authorized and/or directed Access Bags to sell the products. To this point, MacBeth produced before the Court an internal email detailing its instruction to Access Bags to cease sales of the products. (See p. 26). Based on this evidence alone, the plaintiff cannot meet the burden of clear and convincing violation of the Court's order.

The unsubstantiated statement of Mr. Simonides cannot satisfy the burden of clear and convincing. But to be sure, there exist documentary evidence which substantiates MacBeth's assertion that it indeed instructed Access Bags to cease sale of all whale products. For example,

6

on December 15, 2015 - after being instructed by MacBeth to remove all whale products - Access Bags submitted an invoice to MacBeth, charging MacBeth because "[Access Bags has] to open 1,047 cartons, remove the whale tote bags, repack and close each carton."  A true and accurate copy of the December 15, 2014 invoice submitted by Access Bags from Mr. Simonides is attached to the Affidavit of Margaret Josephs as **Exhibit A**.   This document alone demonstrates that MacBeth complied with the Court's order and instructed vendors - including Access Bags - to cease all sales.   Access Bags was charging MacBeth for its inability to sell the whale products.

      The evidence contradicting Mr. Simonides's fabricated statement does not end there.   In its ruling, the Court noted that the April 21, 2015 internal email from Ralph Nasar of MacBeth referenced a letter detailing a termination letter between the parties based on the agreement of the parties to part ways.  (See p. 26).  What Mr. Simonides fails to point out in his affidavit is that on April 30, 2015 he also contacted Mr. Nasar (in writing) and referenced the subject termination letter, stating:

> I haven't seen your Lawyers termination letter you said you have written up regarding Access License with Kennedy Int./MACBETH agreement and the fact that our two companies are mutually parting ways.  This is due to the whole bag program on the MACBETH website is one with Access as we discussed.
>
> Please forward that to me as soon as possible.

A true and accurate copy of the April 30, 2015 email is attached to the Josephs Aff. at **Exhibit B**. A cursory review of **Exhibit B** reveals the animosity Access Bags and Ms. Simonides had for MacBeth relating to various business expectations.   However, contrary to his claim that he was verbally told by MacBeth that Access Bags could sell the whale products, on June 11, 2015,

7

during the same string of emails, Mr. Simonides admits that "…*I think it was fair not to charge [MacBeth] the $23,000 whale tote fiasco for all we paid*, lost in TJX etc. for the end $." See **Exhibit B**. (emphasis added). It is incredible, to the point of being disingenuous, that Mr. Simonides would fail to refer to the entirety of his communications in his affidavit - which contradict his uncorroborated verbal claim. Indeed, the documentary evidence shows that MacBeth instructed Access Bags to cease sales. Access Bags submitted an invoice as a result of the instruction and its President recognized the same as the "whale tote fiasco." The documentary evidence is entirely opposite of the supposed uncorroborated verbal claim of MacBeth in which the Court premised its ruling. Based on the foreoing, the plaintiff has not established by clear and convincing evidence that MacBeth violated the Permanent Injunction.

For the sake of completeness, MacBeth's position never changed during the relevant time period. For example, in August 2015, Mr. Nasar informed MacBeth's licensing counsel - in writing - that Mr. Simonides held MacBeth responsible for the whale bags he produced and that MacBeth informed he cannot sell because of the injunction issue. A redacted copy of an August 26, 2015 email is attached to the Josephs Aff. as **Exhibit C.** Indeed, Access Bags' own counsel contacted MacBeth in September of 2015 indicating that his client was damaged by way of, among other things, "unsaleable inventory." A true and accurate copy of the September 30, 2015 email is attached to the Joseph's Aff. as **Exhibit D**.

In conclusion, there is no direct evidence establishing that MacBeth violated the Court's Consent Judgment and Permanent Injunction. If anything, the record is clear that MacBeth complied with the Court's Order.

### III. CONCLUSION

For the foregoing reasons, the plaintiff's Motion for Partial Reconsideration should be allowed.

        Respectfully submitted,
MACBETH COLLECTION, L.L.C.,
MACBETH COLLECTION BY
MARGARET JOSEPHS, LLC,
MACBETH DESIGNS LLC,
MARGARET JOSEPHS
By their attorney,

*/s/ Timothy P. Frawley*
Timothy P. Frawley
The Law Offices of Timothy P. Frawley
One International Place, 14th Floor
Boston, MA  02109
(617) 535-7712
timothy.Frawley@tfrawleylaw.com

Dated:  August 9, 2017

### CERTIFICATION

I hereby certify that on December 12, 2018, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all counsel of record via the Court's electronic filing system.  Parties may access this filing through the Court's system.

   */s/  Timothy P. Frawley*